EDWARDS HOTEL CO. *v.* CHAMBERS.*

(In Banc.   Jan. 18, 1926.)

[106 So. 763.   No. 25063.]

LANDLORD AND TENANT. *No enforcement of lease contract because of minds of parties not meeting.*

Lease contract for certain store space, including part of basement, in hotel about to be built, made on view of blueprint, though providing that premises are taken after examination, is one in which the minds of the parties, without fault of either, failed to meet, so that neither can enforce it; the basement, when built, being so cluttered up with steam, sewer, and water pipes, on the ceiling and walls as to render it unfit for tenant's use, and blueprint not showing, and neither party knowing, that this was to be the case.

ETHRIDGE, J., dissenting.

*Corpus Juris-Cyc. References; Landlord and Tenant, 35 C. J., p. 1158, n. 65.

APPEAL from chancery court of Hinds county, first district.

HON. F. H. LOTTERHOS, Special Chancellor.

Suit by E. T. Chambers against the Edwards Hotel Company, with cross-bill by defendant. From the decree, defendant appeals, and complainant brings cross-appeal. Affirmed.

*Green, Green & Potter,* for appellant.

I.   The terms of the written lease as to the premises demised are explicit, and describe the basement space leased, and this basement space, referring to the first floor space above, necessarily carries with it the basement as designed to be constructed by the plans then in existence as to the pipes, which were never changed except to make the elbows meet Chambers' requirement. Chambers' excuse is that he did not read the lease. One is bound to read a contract before signing and bound by the contract he signs, even though not read by him. *Coats* v. *Bacon,* 77 Miss. 324; 25 Cyc. 63.

II.   *Chambers not entitled to relief by cancellation because he does not do equity and cannot restore the status quo.* Where parties enter into a contract and one of them performs the contract, at the instance of the other, although not fully performed, there can be no cancellation of said contract, and the extent of the remedy would be reduced to the extent of the damages sustained. *Watts* v. *Bonner,* 66 Miss. 629; *Shipp* v. *Wheeless,* 33 Miss. 647; *Hanson* v. *Field,* 41 Miss. 712; *Deans* v. *Robinson,* 64 Miss. 195; *Caluk* v. *Burt,* 75 So. (Miss.) 592.

Here, there is no offer to do equity and restore the *status quo* in the bill or in the decree, but the hotel company stands a clear loss of many thousands of dollars expense in changing the plans of the hotel as originally designed and in making it conform to the demand of Chambers. See 9 C. J. 1207; *Brown* v. *Norman,* 65 Miss. 378; 2 Pom. Eq., sec. 910.

III.   *Ratification—Estoppel. Georgia Pacific Ry.* v. *Bridges,* 66 Miss. 583. See, also, 9 C. J. 1201.

IV. *The minds of the parties met.* The contract was in writing and was made ''without representations and after an examination,'' according to its express terms: with Exhibits B showing the ground plan of the store as changed according to the requirements of Chambers, and with no representations as to the height of the basement or what it contained; it was leased as it was, and according to the plans of the architect which were never changed as to the basement; and thus the minds of the parties met upon the terms of the contract as written, and there is nothing shown contradictory to the terms of the contract, and it was incompetent to vary the terms of the contract by parol evidence. The principle announced in *Sample* v. *Bridgforth,* 72 Miss. 293-6 is applicable to Chambers' contention and is a full answer thereto. See, also, *Wise* v. *Brooks,* 69 Miss. 891.

*J. A. Teat,* for appellee.

The central facts before the trial court are that: (1) Chambers rented the space mentioned in the contract to be used as a retail store; (2) Chambers had intended to arrange the basement with the furniture as a display room.

When the basement had been completed, the portion of the basement which had been rented by Mr. Chambers, and which he had intended to occupy was filled with pipes. These pipes were essential to the proper use of the building, but totally unfitted the room for the use of Chambers. The portion of the basement rented by Mr. Chambers was servient to the building proper, and it could not be rearranged otherwise. It became perfectly manifest that Chambers would not have rented the space in question if he had known that this condition would exist. The Edwards House Co. would not have rented the store room to Chambers with the condition that it would be free from pipes. This is stated by the defendant, the architects and the contractors. The trial

court is, therefore, confronted with this undisputed evidence, that neither party would have entered into the contract if they had understood what the other demanded. In other words, the contract would not have been made if either had understood the other.

*The minds of the parties did not meet.* There was no mutuality of agreement. Both the complainant and the defendant misapprehended or misunderstood or failed to know certain and vitally material facts which, if so understood, would have made the contract impossible. Neither the complainant nor the defendant have entered into a legal contract.

The written contract itself did not in any wise allude to this important consideration. The language of the contract was so indefinite and uncertain that it failed to give notice to either complainant or defendant of the objectionable matter. It is a primary proposition of law that there can be no contract without the meeting of the minds of the parties thereto. The parties must have a distinct intention in common to both of them and without doubt or difference. Until all understand alike, there can be no assent; there can be no contract. If any portion of the proposed terms is not settled, or no mode is agreed upon by which it can be settled, there can be no agreement. 13 C. J. 263; 6 R. C. L. 643, et seq.; 2 R. C. L. Supp. 171; 4 R. C. L. Supp. 431; 5 R. C. L. Supp. 360; *Beaver* v. *Crump,* 76 Miss. 34, 23 So. 433; *Bomer* v. *Canady,* 79 Miss. 222, 30 So. 638, 55 L. R. A. 328; *Welch* v. *Williams,* 85 Miss. 301, 37 So. 561; *Fowler* v. *Nunery,* 89 So. 156; *Ingram Day Lumber Co.* v. *Rodgers,* 62 So. 230, 105 Miss. 244; *Klein-Hans* v. *Jones,* C. C. A. 68 Fed. 742.

The contention that the cause should be reversed so that a trial court might award damages against Mr. Chambers to the amount of expenses incident to the mezzanine gallery, light, washstand, and the moving of a pipe must, of course, rest finally upon a constructural liability. To answer this we may say that the defendant

furnished complainant a blue print, which did not show the objectionable features of the pipes and the contract itself did not specify the servient use of this storeroom to the pipes in the hotel. Mr. Chambers asks in his bill for specific performance and offered to do equity; that is, to receive the store room and pay the rent, as he had contracted to do. This measured in full the liability of Mr. Chambers to the defendant.

We note that the defendant further contends that, according to a stipulation in the contract, Chambers had taken the premises after an examination and without representations of any kind, etc. This contention cannot be upheld because the building was rented during the progress of its construction when no one could have inspected it. If this clause of the contract has any force whatever, it relates to the blue prints which were furnished to the complainant by the defendant and which took the place and served the purpose of an examination of the building. This was the course of conduct had by and between the complainant and the defendant during the preliminary proceedings leading to the contract and the blue prints formed the basis of consideration and discussion between the complainant and defendant from the time that the contract was signed until their relations were severed.

Argued orally by *Marcellus Green,* for appellant, and J. A. Teat, for appellee.

Anderson, J., delivered the opinion of the court.

Appellee, E. T. Chambers, filed his bill in the chancery court of the first district of Hinds county against appellant, Edwards Hotel Company, a domestic corporation, for the specific performance of a lease contract in writing entered into between the parties, and, if not entitled to that relief, for the cancellation of the contract and for damages claimed to have been suffered by

appellee because of an alleged breach thereof by appellant. Appellant answered appellee's bill, admitting the existence of the lease contract, but denying that it had breached the contract, asserting on the contrary, that appellee had breached it. Appellant made its answer a cross-bill, setting up the validity of the lease contract and its breach by appellee, and seeking to enforce payment against appellee of the monthly rental provided in the contract. Appellee answered appellant's cross-bill, denying its material allegations. There was a trial on the pleadings and on proofs resulting in final decree dismissing both appellee's original bill and appellant's cross-bill and apportioning the cost equally between them. From that decree appellant prosecutes a direct appeal and appellee a cross-appeal.

At the time the lease involved was executed, appellant had under construction a modern twelve-story hotel building, the foundations and walls of which were steel, brick, and concrete. Appellee was a merchant in the city of Jackson, dealing in office supplies, furniture, and fixtures, desks, typewriters, etc. Appellee desired space in appellant's hotel, when completed, for the carrying on of his business. Negotiations between Mr. Flowers, representing appellant, and appellee, resulted in a lease contract being entered into between the parties on the 20th of June, 1923, by the terms of which appellant leased to appellee for a term of ten years, commencing the 1st day of January, 1924, the premises described as follows:

"Space described as being between the lobby entrance on Capital street and drug store, and basement space thereunder running east to the center of the lobby entrance, also basement space thirteen feet wide on east end of drug store space and running twenty-six feet south of the hallway, . . . to be used and occupied as a retail store for the transaction of business of office supplies and furnishings," etc.

A monthly rental of two hundred ten dollars was provided for in the lease. The lease also provided:

"The tenant agrees that the premises are taken after examination and without any representation of any kind on the part of the landlord or its agent."

The gravamen of appellee's bill is that, when the leased premises were completed and tendered to appellee, the basement room was so filled up with steam, sewer, and water pipes attached to the ceiling and along the walls that it was rendered unfit for his business, and that that fact was a breach of the lease contract.

The trial court found, and we think the finding is supported by the evidence, substantially the following state of facts: That, when the lease contract in question was executed, the leased premises were not in existence, the construction of appellant's hotel not having reached that stage; that appellee was furnished the plans for the construction of the hotel represented by blueprints, but there was nothing in such blueprints indicating that the basement room covered by the lease was to be so constructed as that numerous water, sewer, and other pipes were to be located against the ceiling and on the walls rendering the room unfit for the purposes for which appellee leased it; that the dominant idea of Mr. Flowers, representing appellant, was to construct a modern hotel building according to the plans and directions of appellant's architect, who designed and supervised its construction; that Mr. Flowers did not know that the basement room was to contain the numerous pipes which it did contain when completed, or any pipes whatever; that if he had known that fact, and that it would render the room unfit for appellee's business, still appellant would not have altered its plans in that respect, in other words, that appellant would have carried out the construction of its building as planned, including the basement room with the objectionable pipes in it, even though it had known that such construction would render the room unfit for appellee's business, but, in that event, the lease contract would not have been entered into by the parties; that, if appellant had known the pipes were to be in-

stalled in the room as they were, it-did not know that the room would thereby be rendered unfit for appellee's business; that the basement room, on account of the pipes, was wholly unfit for the purposes for which the appellee leased it; that, if appellee had known the condition the room was to be in, he would not have entered into the lease contract; that the minds of the parties did not meet; that each party to the contract had in mind and intended certain things unknown to the other.

The trial court's conclusion of law from these facts was that, the minds of the parties having failed to meet, the lease contract was unenforceable, and should be canceled; and the parties left each to carry his own loss. We have reached the same conclusion.

In the argument much stress is placed on the fact that appellee had no right to complain of the basement room being so cluttered up with pipes as to render it unfit for use because of the provision in the contract quoted above; that at the time of the making of the lease appellee had made an examination of the premises, and was relying on such examination and not any representation by appellant. But the fact is that at that time the leased premises could not have been examined by appellee because they were not in existence. That provision in the contract, therefore, it seems, can have no force. It is true that, when the lease contract was entered into, appellee was shown the plans of the hotel building represented by blueprints, but it is undisputed in the evidence that such plans did not show that the basement room would have a lot of pipes overhead and around its walls. Appellee contracted for one thing and appellant, without any fault on his part, tendered him a different thing. The minds of the parties never met; they never understood each other. The contract was incomplete. It failed to provide for the controlling considerations moving to each of the parties. The case is unusual.

We are of opinion, however, that in a case where the minds of the parties to a contract, without the fault of

either, fail to meet, then neither can enforce the contract. The court will leave them where it finds them.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I dissent from the majority opinion for the reason that the parties signed an elaborate contract covering sixteen pages of the record in this case and containing twenty-seven paragraphs or clauses, making a full and complete agreement between the parties, which, under well recognized rules, is the sole exponent of the agreement of the parties. There can be no question in my opinion about the sufficiency of the writing to constitute a legal contract and nothing is left to implication therein. The twenty-first paragraph of the contract, in my view, is practically eliminated by the construction of the majority of the court. This paragraph, in full reads as follows:

"The tenant agrees that the premises are taken after examination and without representation of any kind on the part of the landlord or its agent. No representative or agent of the landlord is or shall be authorized or permitted to make any representation with reference thereto or to vary or modify this agreement in any way, and this lease contains all the agreements and conditions made between the parties hereto, and any addition to or alteration of or changes in this lease, or other agreements hereafter made or conditions created, to be binding, must be made in writing and signed by both parties, and the provisions of this paragraph or of any other part of this lease cannot be waived, except by a writing duly signed by the landlord."

It is plainly agreed in this paragraph that the lessee had inspected the premises and made the contract after examination without any representation on the part of the landlord or his agent. It is further agreed that no agent is permitted to make any representation or to vary or modify the agreement in any way, and it is plainly

agreed that the lease contains all the agreements and conditions made between the parties thereto, and that none of the conditions and agreements can be waived, except by the landlord.

It is plain to my mind that this contract means that the lessee had examined the plans and specifications for the building, and it is nowhere alleged or proven in the record that the room was not constructed in strict accordance with the plans and specifications of the building. It would be impossible to construct a twelve-story building without having plans and specifications; and where the building is not erected, but is either to be built, or is in process of building, a stipulation that the lessee has examined the building and taken it without representation on the part of the lessor means that he has examined the plans and specifications and takes the leased part of the building as it will be when built in accordance with these plans and specifications.

The facts in the record show that the lessee applied to the lessor for space in said building and that the lessor distinctly told him that it would not make the changes unless agreed to by the architect; that it would not change the plans of the building without such consent. The lessee thereupon went to New Orleans, La., to consult the architect, and laid before the draftsman of the plans and specifications the changes which he desired, and took the blueprint made by such draftsman, and acted upon it. In order to accommodate the lessee and to conform to his wishes, certain changes were made in the basement space, and a stairway cut from the basement to the first floor, and a mezzanine floor and stairway thereto constructed. The lessor procured another tenant to surrender a portion of its lease to accommodate the lessee in the present case. There were also alterations made in the storeroom, causing, necessarily, some considerable expense, and which were made at the instance and request of the lessee, and according to the plans furnished him by the draftsman of the architect.

To say that under these facts the minds of the parties did not meet and that the lessor must suffer the loss occasioned by the failure of the lessee to comply with his contract, it seems to me is to sanction an injustice. The facts that the lessee did not in fact examine the plans and specifications and did not understand exactly how the building would be constructed is entirely his own fault, and is not attributable to the lessor in any degree whatever. The parties have a constitutional right to make their own contracts and to bind themselves by written contracts such as the one we have before us. If a man signs a contract without reading it and without informing himself with reference thereto, without any deception or representation by the opposite party, he must take the consequences of his failure to do what the law plainly requires him to do. The appellee, the lessee, in his testimony testifies that there was no representation made to him by the lessor with reference to the condition of the basement, nor what it would contain. Every person must know that the construction of a building of this type under modern conditions calls for piping, and there is no showing the the lessee was deceived at all, nor, in my opinion, does the record show the basement space was not suited for storage purposes. Certainly the record would warrant a finding by the chancellor that it was suited for storage purposes notwithstanding the pipes laid therein.