**UNITED STATES of America,
Plaintiff,**

v.

**HARRISON COUNTY, MISSISSIPPI
et al., Defendants.**

**Civ. A. No. 2262.**

United States District Court
S. D. Mississippi, S. D.
March 8, 1967.

Irvin N. Tranen, St. John Barrett, Edward Lazowska, Dept. of Justice, Washington, D. C., Robert E. Hauberg, Jackson, Miss., for the United States.

G. E. Estes, Jr., Owen T. Palmer, Jr., Gulfport, Miss., Jacob Guice, Biloxi, Miss., S. E., Jr., & George Morse, George R. Smith, Neil White, Gulfport, Miss., C. Randall Jones, Jr., Pass Christian, Miss., Joe T. Patterson, Atty. Gen., Jackson, Miss., Webb Mize, Boyce Holleman, Charles Galloway, Gulfport, Miss., Edward Tremmel, Biloxi, Miss., for defendants.

WILLIAM HAROLD COX, Chief Judge.

This suit was instituted by the United States to compel specific performance of a contract with Harrison County, Mississippi with respect to the use of the twenty-six mile long artificially made sand beach abutting the north line of Mississippi Sound along the south line of Harrison County, Mississippi; and for injunctive relief against peace officers who allegedly discriminated against negroes in the use of the sand beach. Between July 1925 and March 1928, Harrison County constructed a seawall on the south most fifteen feet of a fifty foot easement along the south right-of-way line of US Highway 90, a distance of approximately twenty-six miles from the Biloxi Lighthouse westerly to Henderson Point along the Mississippi Sound, to protect that interstate highway and the residential and commercial properties abutting said highway on the north. This area for many years had taken a terrific beating by the sea from several hurricanes which did extensive damage to the highway and nearby properties resulting in the expenditure of millions of

dollars for repairs. Harrison County constructed that seawall at an out-of-pocket expenditure of approximately three million four hundred thousand dollars. The highway right-of-way and the seawall easement were both acquired for public use off the south end of lots of private owners who had residences or businesses on the north end of such lots abutting the north right-of-way line of said highway. Those lots extended southerly past the seawall for distances of two or three hundred feet. After the construction of the seawall, the greater part of these lots extending south of the seawall were caused by the seawall to be washed into the sea thereby endangering the seawall and this interstate highway. Harrison County determined that it was unable to shoulder the expense of any such venture alone and sought government financial assistance. The United States had a policy of advancing public funds as a contribution toward necessary expenditures used for the protection of public property, such as the seawall and the interstate US Highway 90.[1]

The Legislature of the State of Mississippi enacted Chapter 334 and Chapter 335, Laws 1948 to authorize Harrison County to borrow funds and to enter into a contract with the United States government for a contribution of $1,133,000.00 as approximately one-third of the estimated cost of such venture. On January 23, 1951 the county entered into a written contract prepared by government counsel for the construction of a three hundred foot wide sand beach to be pumped in by the county from the shallow waters of Mississippi Sound to abut the south footings of the seawall. All of this work was done by the county

with its employed labor and with equipment which it was authorized to and did purchase for that purpose at a cost to the county alone of approximately $2,266,000.00. The contract, among other things, obligated the county: "To provide at its own expense all necessary lands, easements and rights-of-way for the venture." The government contends that this sand beach was designed and intended for public use for recreational purposes, as well as for drainage facilities and footings and support of the seawall against ravages of the sea. The United States contributed one million one hundred thirty-three thousand dollars to that venture. On December 22, 1950 the Board of Supervisors of the county, as its managing agency, adopted a resolution which provided that they "do hereby dedicate perpetually to the public as a public beach that sand beach or fill proposed to be pumped into and/or constructed from the seawall, approximately three hundred feet and extending from Henderson Point on the west to Biloxi Lighthouse on the east." The resolution reserved to the county and to the government the right to control and supervise the beach as public property and to make repairs, extensions or improvements thereto with rights of ingress and egress therefor. The United States drafted its own instruments and made its own desired independent title investigation as to the ownership of the title to this three hundred foot wide sand beach upon completion of construction thereof by the county as a stranger to the title to the abutting lands. There was a difference of opinion among lawyers at the time as to the ownership of such sand beach created by artificial accretion without authority of the owners

1. The River & Harbor Act (33 U.S.C.A. § 426e) provides that: "[I]t is declared to be the policy of the United States, subject to the following provisions of Sections 426e–426h of this title to assist in the construction, but not the maintenance, of works for the restoration and protection against erosion, by waves and currents, of the shores of the United States, its Territories and possessions." Paragraph (d), captioned "Shores Other

Than Public," provides: *"Shores other than public* will be eligible for Federal assistance if there is benefit such as that arising from public use or from the protection of nearby public property or if the benefits to those shores are incidental to the project, and the Federal contribution to the project shall be adjusted in accordance with the degree of such benefits."

of abutting lands. The Supreme Court of Mississippi subsequently decided that sand pumped from the shallows of Mississippi Sound to create this fill south of the seawall without participation therein by the owners of the servient estates in these lands belong to these owners as a matter of law under the doctrine of artificial accretion.[2] The United States Engineers and their advisors were once apparently advised that such lands would belong to the State of Mississippi, but later knew before making the contribution thereto that there was serious doubt as to the validity of such legal views. The property owners in the meantime neither did nor said anything to encourage or discourage such venture and were not consulted and did not participate in any of the negotiations between the county and the government for such contribution. Neither the government nor the county ever actually considered or intended that the county would be obliged under its agreement to obtain an easement for recreational purposes over this sand beach area from anybody.[3] After the construction of the sand beach with all of the drainage facilities provided thereby, the county invoked the powers of the Board of Health and its assistance to zone this beach area and prohibit the emptying of raw sewage therein for the protection of bathers using the beach. A large part of the entire beach property is owned and operated by hotels and motels and kindred establishments whose guests use such facilities. The Veterans Administration facilities belonging to the United States government own several hundred feet of this beach property and prohibited recreational use of the beach by the individual public, and limited the use thereof only to its patients and personnel.

Through the intervening years, the county at its expense has regularly and periodically dragged and swept and cleaned the sand beach as required by the contract with the government and has maintained and repaired the seawall, and has kept its drainage facilities over the sand beach operating and has exercised full rights of ingress and egress thereto at all times without objection. The owners of these residences and business establishments in the main have paid little attention to the use of the beach in front of their properties until such use was abused by night time misbehavior

2. The Supreme Court of Mississippi in Harrison County, Mississippi v. Guice, 244 Miss. 95, 140 So.2d 838 held in a case involving one of the defendants here, that Mrs. Guice became the owner in fee by artificial accretion of the sand beach pumped in from Mississippi Sound on to the south end of her land which extended to mesne high tide with all rights of a littoral owner. There, as here, the county did not acquire any further easement than the fifty foot easement acquired under Chapter 319 Mississippi Laws 1924. It acquired nothing under Chapter 334 Mississippi Laws 1948. The Court held that the county had a right to maintain and repair the seawall and the sand fill south of the seawall as a road and seawall protection structure with ingress and egress over and across said Guice land for said purposes. The south line of the Guice land was fixed as the mesne high tide line of Mississippi Sound as it presently exists. This land was thus burdened with an easement for US Highway 90 plus the seawall plus such easement rights for repairs and maintenance of the seawall and no more. Thus the seawall improvements constructed in 1951 were added burdens authorized by the 1924 statute, "but a considerable portion of what was done in 1951 was outside the fifty foot right-of-way acquired in 1925." That decision applies here and is controlling in this case.

3. The legal effect of this grant of this surface easement is controlled by state law and not federal law. The title to the servient estate rested in the private owners of these beach properties, subject only to the seawall surface easement and the right-of-way of US Highway 90. It must thus be determined under Mississippi law as to whether or not Harrison County, Mississippi as owner of this fifty foot seawall easement and the right over adjacent land to construct the drainage and support system for the seawall could make use of such area for sun bathing, swimming, picnicking and the like by the general public. That is the gist of Wallis v. Pan American Petroleum Corp. et al., 384 U.S. 63, 86 S.Ct. 1301, 16 L.Ed.2d 369.

and their moral sensibilities were offended by such improper uses. Theretofore, both white people and colored people had made some limited use of the beach for bathing and picnicking without objection, but when such permissive use was abused, these owners ordered people of both races off their property. Police protection of their properties was requested by these owners. The City of Biloxi had no part or participation in the construction of this sand beach, but its officials and the sheriff of the county are made parties to this suit with the claim that they connived or conspired with each other to deny negroes a supposed right as individual members of the public to enjoy public recreational facilities on these privately owned lands; and that they discriminated against negroes in so doing. This is not a civil rights suit as government attorneys so correctly stated at the bar. It is basically and fundamentally and primarily a suit to quiet the title to its supposed recreational easement over this sand beach for individual public use; or in the alternative for specific performance to require Harrison County to acquire such easement for such individual use by the general public; and to enjoin these public officials from arresting and charging persons making unauthorized use thereof with the violation of the trespass laws of Mississippi.

■■ The Court has carefully examined and considered this entire record and has studied the briefs of counsel and has made extensive independent research herein. The Court is of the opinion that this three hundred foot wide (north to south) by twenty-six miles long (east to west) sand beach pumped in from the shallow waters of Mississippi Sound nearby without any participation therein by the owners of the abutting properties thereby inured to the respective abutting owners whose properties front on Mississippi Sound in Harrison County, Mississippi. That is the law in this state as announced in the Guice case. There was never any meeting of the minds of the parties representing the United States and Harrison County that the latter ever assumed any duty or obligation to acquire a recreational surface easement over said sand beach for individual public use.[4] Neither the State of Mississippi nor Harrison County ever had or acquired any right to burden said sand beach with any such easement for recreational use by the general public.[5] The private owners of the abutting lots own that part of said sand beach lying between the east and west line of their properties extended southerly in straight lines into Mississippi Sound, with all littoral rights incident thereto, subject to the right-of-way easement of US Highway 90, and subject further to the fifty foot seawall easement immediately south thereof, and subject to all of the rights vested in and required by said seawall construction, as such easement rights were delineated and defined in Henritzy v. Harrison County, 180 Miss. 675, 178 So. 322; and all other public rights now being exercised by Harrison County in furtherance of the construc-

4. In Edwards Hotel Company v. Chambers, 141 Miss. 487, 106 So. 763, the Court dismissed a complaint for specific performance of a lease contract embracing a well described area in the basement of a twelve story building under construction. Blue prints were shown the lessee and the lease provided that the premises were "taken after examination and without any representation of any kind on the part of the landlord or its agent." The building when completed had the area cluttered with pipes which made it unacceptable for lessee's use. The Court said that the minds of the parties did not meet; that each party to the contract had in mind and intended certain things unknown to the other. The complaint was dismissed.

5. Significantly, the fifty foot easement for the seawall was actually acquired by adverse possession. "The south 15 feet of the right of way has been occupied by the sea wall proper, and this within itself, under the evidence as reflected by the agreed statement of facts, would clearly extend the claim and occupancy to the calls of the northern boundary of the 50-foot right of way as color of title." Henritzy v. Harrison County, 180 Miss. 675, 178 So. 322. The county never sought or acquired any recreational easement over this sand beach.

tion of drainage structures, supports and footings over and under said sand beach which were devised and constructed and are maintained to protect said seawall and the Interstate Highway 90 North thereof. The Court will presently make certain other necessary and more specific Finding of Facts and Conclusions of Law.

## FINDING OF FACTS

(1) The United States instituted this suit against the parties named in the second amended complaint in this case, but approximately eighteen hundred property owners and approximately four hundred mortgagees, or holders of contractual liens on the properties of such owners were permitted to and have intervened herein and claimed their title and liens to their respective properties in this sand beach in suit. The Court thus finds that it has before it in this case all of the necessary parties in interest for a full adjudication of the subject matter of this case as a land suit.

(2) This seawall was constructed with county funds in 1925 to 1928 at a cost to Harrison County of three million four hundred thousand dollars to protect US Highway 90 and the properties abutting Mississippi Sound from the ravages of the sea on the occasion of frequent high tide and several devastating tornadoes which had struck the area many times and inflicted very heavy and expensive damage to this most valuable and highest priced properties in the entire county. This seawall is approximately twenty-six miles long, extending along Mississippi Sound from the Lighthouse in Biloxi to Henderson Point. The seawall was constructed on the south fifteen feet of a fifty foot easement acquired from the private owners of the land, and lay immediately south of the US Highway 90 right-of-way. This seawall was constructed generally between eighty and two hundred feet north of the south line of such privately owned properties, which south line of the privately owned properties was the mesne high tide line of the waters of Mississippi Sound.

(3) Prior to the construction of the seawall, the erosion of the shore line was natural, slow and imperceptible, but subsequently to the construction of the seawall, the erosion was rapid and unnatural and was caused by the existence and location of the seawall. At some points the natural sand beach eroded away to the south line of the seawall, but at other points most or a large part of the sand beach remained; but the general result of the erosion was that the waters of Mississippi Sound did extensive damage to the seawall and US Highway 90, particularly during storms and periods of high tide. The authorities decided that something had to be done and done quickly at very high cost to shore up and protect this seawall as a protection device to such upland improvements. Federal assistance was sought in the form of the contribution of a substantial part of the cost of such protection device. It was decided that footings or abutments of riprap might be constructed, or that a sand beach could be pumped in from the shallow waters of the Sound and beautify and improve the area while operating *primarily* as a device for the protection of the seawall and interstate highway. The United States Engineers erroneously assumed and concluded on their own independent investigation of the law, that this sand beach would ipso facto become the property of the State of Mississippi as it was pumped in place on such beach. But for many months prior to the contract between the parties, dated January 23, 1951, such federal agencies learned and knew that there was a difference of opinion among informed lawyers on that question. There was thus never a meeting of the minds of the parties to that contract that it should ever be or become the duty or obligation of Harrison County to acquire from anybody any recreational surface easement for individual enjoyment by the public over that man made sand beach. The Legislature of the State of Mississippi in enacting Chapter 334 and Chapter 335 Mississippi Laws 1948 expressly declined to authorize the county to "[a]ssure perpetual public own-

ership of the beach" but did grant it the authority "[t]o *assume* perpetual ownership of any beach construction [etc.]" No funds were provided or authorized by the Legislature to be provided for the county to acquire any recreational easement from the private owners of that sand beach; and the United States Engineers and their representatives at all times had actual knowledge of that fact. The United States Engineers were vested with the authority to determine when Harrison County had complied with the requirements for United States financial participation in the construction of that sand beach; and thus with full knowledge of the facts decided that Harrison County had fully complied with such requirements and expectations of the United States, thereupon dispersed one million one hundred thirty-three thousand dollars to the county as its one-third participation in that venture *for the protection of public property*. The record in this case shows and the Court finds that it would require not less than one million five hundred thousand dollars to acquire at this time a recreational easement over this sand beach for individual public enjoyment. Such a venture and outlay was never in the minds of these contracting parties. The county never had, or acquired legislative authority for any such outlay of public funds for such purpose. The acts of the parties at the time and under the circumstances serves to demonstrate as their contemporaneous construction of the contract documents that no such recreational easement was contemplated, or expected by either party, and certainly not at such an expenditure.

A very large part of this federal grant was used to repair the seawall itself. It must be noted that specific performance is not a matter of right but of sound legal discretion, and will not be decreed, unless the contract is just and fair in all of its parts. Clement v. Reid, (1848), 9 Smedes & M. (17 Miss.) 535; Daniel v. Frazer, (1866), 40 Miss. 507; Aston v. Robinson, (1873), 49 Miss. 348; Yazoo & M. V. R. Co. v. Southern Ry. Co. in Mississippi, (1904), 83 Miss. 746, 36 So. 74; Everett v. Hubbard, (1946), 199 Miss. 857, 25 So.2d 768.

■ (4) On December 22, 1950, the Board of Supervisors, as the managing business agency of Harrison County, adopted the resolution dedicating this entire sand beach to the public as a public beach. The county did not own the title to that sand beach as the instrument assumed, but the county did not undertake to dedicate the beach for individual public enjoyment of recreational facilities and did not warrant or guarantee the ownership of such land. The dedication as an instrument of conveyance merely quitclaimed and released such rights and interests as the county may have had in the property for public use.[6] This instrument was prepared by or on behalf of the United States and does not purport to show that this property was to be used by any individual members of the public for recreational purposes. The county never had any power or authority to borrow any money to buy, or to take by any eminent domain proceeding any property from anybody as a recreational facility for the general public, or any individual member of the public.[7]

---

6. The resolution as a word of conveyance dedicated this entire sand beach to the public without any statutory words of warranty. Section 845 Mississippi Code 1942 provides: "A conveyance without any warranty shall operate to transfer the title and possession of the grantor as a quitclaim and release." Section 846 Mississippi Code 1942 provides: "A conveyance of quitclaim and release shall be sufficient to pass all the estate or interest the grantor has in the land conveyed, and shall estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed."

7. Chapter 334 Mississippi Laws 1948 and Chapter 335 Mississippi Laws 1948 authorized Harrison County to borrow money to repair, strengthen and maintain road protection structures and seawalls and to comply with Public Law No. 727 of the 79th Congress, 60 Stat. 1056, to induce the United States to provide federal aid of approximately one-third of the cost of such venture estimated at three million seven hundred fifty thousand dollars with a participation by the United States of approximately one million one hundred thirty-three thousand dollars. These acts ambiguously authorized the county: "To

(5) The words "public use" appearing in the contract documents in suit were intended to mean and did mean a use by public authorities of the beach in connection with the seawall as a device designed and intended basically, and primarily for the purpose of protecting the seawall and interstate highway, and upland installation and improvements from damage by high seas. Significantly, the resolution of dedication was never published and the public never had any notice or knowledge thereof. The property owners never knew of the existence of that resolution of December 22, 1950, and never participated in any negotiations between the county and the government for the latter's contribution to that venture. The provision in the contract in suit, dated January 23, 1951, providing that the county would "provide at its own expense all necessary lands, easements and rights-of-way" related and was intended to refer only to construction easements and rights necessary to the construction of such facility and not to any easement to entitle any individual member of the general public to use the sand beach for his recreation as a matter of right after the beach was created. There is nothing in this record to show by a preponderance of the evidence that this county ever intended, or undertook to obligate itself to acquire at its expense an additional servitude on the land of such private owners so as to enable any individual member of the general public to use that sand beach as a matter of right for his pleasure. No contract documents in suit lead this Court to such conclusion as contended for by the United States, but all of the facts and reasonable inferences convince this Court to the contrary.

(6) The record in this case shows that many of these owners from time to time had run members of both races off their beach property. Some individuals abused the privilege permissively granting some people of both races to use the beach, until that privilege was abused by acts which offended the moral sensibilities of these owners. These property owners thereupon instructed peace officers to arrest individuals using such properties without their knowledge or consent as trespassers. The defendant sheriff's term of office expired, and he has since died and his successor (McDonnell) has not made any such arrests during his term of office. No official of the City of Biloxi or Harrison County has discriminated against any person in the administration of the law on account of race, but the peace officers have performed their duty impartially in the administration of the trespass laws of the State of Mississippi with respect to the property in suit.

(7) The county of Harrison and its supervisors have fully complied with all requirements and performed all duties and obligations to the United States under the contract documents in suit; and the second amended complaint of the plaintiff in suit is without merit and should be finally dismissed, but without the assessment of cost.

(8) No individual member of the public has any right to use this sand beach for any purpose without the permission of the private owners. The private owners who have intervened in this case are found by the Court to be the owners of the fee simple title to this sand beach, together with all littoral rights incident thereto, subject to the US Highway 90

---

assume perpetual ownership of any beach construction and its administration for public use only." The United States says that such use was intended for picnics, sun bathing, fishing, etc. While the defendants contend that the public beach was designed and intended primarily as a protection to the seawall and as a drainage facility in furtherance thereof and not as a recreational facility. Nothing in

the title or body of either act, expressly or by inference, provides that this sand beach was intended as a recreational facility in whole, or in part. The county never acquired any land for that purpose, but did acquire and has used it for the public purpose of protecting the seawall and the US Highway 90 immediately to the north.

right-of-way easement and the seawall easement and incidental rights in the sand beach to maintain and repair the beach as a support and footing for the protection of said seawall, with necessary rights of ingress and egress, etc., but for no other purpose.

## CONCLUSIONS OF LAW

(1) This Court has full jurisdiction of this suit under 28 U.S.C.A. § 1345. All necessary parties not made defendants in this complaint were permitted to intervene, and are before the Court in this case.

(2) There was an established public policy of the United States to contribute financially in any venture designed and intended for the protection of public property. The Congress of the United States authorized the expenditure in this case of one million one hundred thirty-three thousand dollars by the United States as a one-third contribution toward the total cost thereof which Harrison County assumed for the public purpose of protecting this seawall against further erosion, so as to enable that seawall to protect Interstate Highway 90 and upland improvements and installations. This sand beach as it was put in place by Harrison County without any participation of the abutting owners of

the land, thereby became vested in such owners of the land lying between the east and west lines of the respective properties extended southerly to the mesne high tide line of Mississippi Sound, under the doctrine of "artificial" accretion; together with all littoral rights incident to the ownership of said land, subject to the US Highway 90 right-of-way easement across said land and subject to the seawall easement across said land, as such easement was defined in Henritzy v. Harrison County, supra, as such indeterminate easement was used after the construction of said sand beach. The seawall easement did not specifically describe its boundaries, but it was actually acquired in part by adverse possession and in part by expropriation. The use of such an easement defines its powers and boundary which may not be changed, unless authorized by the instrument under which it was acquired or by agreement of the parties.[8] An added servitude may not be unilaterally added to an easement.[9]

Mutuality is essential to the validity of any enforceable contract. The minds of the parties to the contract documents in suit never met on any idea or suggestion as contended for by the United States that Harrison County ever obligated itself to furnish at its expense a recreational easement over the land of

---

8. Capital Electric Power Association v. Hinson, 84 So.2d 409, 412. The Court had before it in that case a right-of-way easement with an indeterminate boundary which the Court said was established by the use made of the area by the parties as their construction of the instrument and that when once thus established that its boundaries could not be enlarged or expanded without the consent of the servient owner of the land unless authorized by the easement agreement. To same effect is Hamilton v. Transcontinental Gas Pipeline Corp., 236 Miss. 429, 110 So.2d 612; Thompson on Real Property, Vol. 2, § 1581, page 188–189; 28 C.J.S. Easement § 84, page 763.

9. The right of a sovereign who has acquired surface easement rights through eminent domain must have those rights strictly construed. The holder of easement rights in property may not enlarge upon such rights by the added burden of additional servitude. Such cases are collated in Ball v. American Telephone & Telegraph Co., 227 Miss. 218, 86 So. 2d 42. It was said that a telephone company could not lease to a telegraph company the right to string an additional wire on telephone poles for telegraph purposes without constituting an additional servitude on the servient estate.

these owners, consisting of this sand beach as an additional servitude on said land. Nothing was further from the minds of the parties, or the intention of this county to assume any such duty or obligation. It simply did not do so under the facts and circumstances in this case.[10] The county has taken this large sum of money from the United States and has used every cent of it, together with more than twice that amount of its own money in constructing this sand beach, and in repairing and reconstructing parts of this seawall so as to make it an effective protection device as all parties intended.[11] This entire project with its drainage facilities and footings and abutments as contained in this sand beach were constructed and have been maintained at all times and are maintained now as public improvements perpetually dedicated to the public use and benefit. This whole controversy stems from the original concept of this case as being a civil rights matter, which it is not; but this case involves primarily the question of the existence vel non of a recreational easement over this sand beach. No such easement exists; but the next question is as to whether or not the county obligated itself in any manner by any contract document in suit to furnish at its expense any such recreational easement over this twenty-six mile sand beach at any place. The positive and undisputed evidence and fair inferences from such evidence proves to the satisfaction of this Court that Harrison County did not so obligate itself. It is familiar learning of universal acceptation that the holder of an easement by his unilateral action cannot acquire the right to impose additional burdens or servitudes upon the servient estate by making any unauthorized use of the land, or by abusing or enlarging upon privileges expressly granted thereasto. In short, this is a land suit which must be decided according to the laws of the State of Mississippi. That is the teaching of the latest case from the highest court of the United States in this situation.

(3) The resolution of dedication of this sand beach by the county is not a nudum pactum, but the word "dedicate" as a word of conveyance, without statutory words of warranty, operates only as a quit-claim or release, and not a guarantee of anything under sections 845 and 846 Mississippi Code 1942. The resolution by its own terms thus did not enlarge, or increase the county's legal obligation to do more than it has already done, and is continuing to do in the performance of this contract. The record in this case shows that this county is now continuing to grade and sweep and refill and repair and maintain this seawall, and this sand beach as abutments at its expense at a monthly outlay of many thousand dollars. It is perpetually caring for and maintaining the beach as an abutment of the seawall and for the protection of the seawall and upland properties as it agreed to do for the general public.

It is conclusively assumed as a matter of law that the United States incorporated in each of the contract documents which it drafted everything which

10. It should be noted from Footnote 4 that the parties there had a very clear and positive and well written lease which was not ambiguous, but the Court nevertheless in that case of Edwards Hotel Co. v. Chambers, said that the minds of the parties did not meet in that case and the lease was held void and unenforceable in its entirety. The contract documents in suit are surely not void but have been very effective to accomplish the intended purpose of both parties in this case and nothing more can be required by another agency of the government not familiar with the facts and circumstances at the time.

11. The River & Harbor Act (Footnote 1) provides that the government had a policy of contributing substantial funds to a venture of this kind which was primarily intended for the protection of public property, even though it incidentally benefited and improved private property. The act does not condition a contribution upon the entire project or venture being subjected to public use. The United States bene-

it intended that the county should agree to do as a pre-requisite to its financial contribution to this venture. There is actually no real ambiguity in these documents, but such documents do not require, or exact of the county that which the United States claims in this case. The denial of the existence of any recreational easement over this sand beach is not a cloud on the rights of the parties under the express provisions of the easements.

(4) There is not any substantial evidence before the Court to support any charge to the effect that any of these people who were arrested were at the time exercising any right created and vested in them by Congress to deprive these officials of the right to arrest, charge and try them for such a state offense. City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944. There is likewise no substantial testimony or fairly deducible inferences anywhere to be found in this record to support a suggestion that these officials on any occasion were preferring trumped up charges under any invalid law simply to deprive any colored people of their constitutional rights such as is dealt with in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. Cf. Hatfield v. State of Mississippi (5CA), 363 F.2d 869. The plaintiff has not proved its claim against any of the public agencies, or individuals by a preponderance of the evidence. The claim of the plaintiff is thus without merit and should be dismissed with prejudice without the assessment of cost.

(5) No private individual has any private right of any kind in this sand beach because there exists no recreational easement thereon. All pending objections to evidence and testimony will be overruled. The Court will prepare and enter the judgment.

fited immeasurably from its contribution to this venture by the added protection afforded its Interstate Highway 90. The parties to the contract documents were not disappointed, or surprised, or short-changed, or deceived by anything done by anybody. Actually, many of the property owners never received anything for the taking of the original seawall easement, which was ultimately acquired by adverse possession, as the *Henritzy* case shows in Footnote 5.